PROCTOR TIRE SERVICE INC. *v.* NATIONAL SURETY CORP.

5-4250                                          415 S. W. 2d 45

Opinion delivered May 29, 1967

*Spitzberg, Bonner, Mitchell & Hays* and *Allan W. Horne*, for appellant.

*Smith, Williams, Friday & Bowen;* By: *Frank Warden Jr.*, for appellee.

GEORGE ROSE SMITH, Justice. Wright Contracting Company was the principal contractor for the construction of part of Interstate Highway 40 in Lonoke county. Wright executed a statutory contractor's bond, with the appellee as its surety, to guarantee the payment of claims for "materials entering into the construction or necessary or incident to or used in the course of con-

struction" of the highway. Ark. Stat. Ann. § 14-604 (Supp. 1965).

The appellant, a tire dealer at Hazen, sold $4,433.21 worth of truck tires and tubes to Flint Construction Company, a hauling concern that was working on several jobs in the vicinity of Lonoke and Pulaski counties.

One of Flint's jobs was that of hauling dirt as a subcontractor for Wright on the Interstate 40 project. With a trivial exception, none of the tires and tubes sold by Proctor to Flint were used on the Interstate 40 job or were even intended by Flint to be used on that job. Nevertheless, Proctor insists that it is entitled to recover the delinquent Flint account from the appellee, simply because Proctor believed, mistakenly but sincerely, that its tires and tubes would be used by Flint as Wright's subcontractor. The trial court, upon proof that is virtually undisputed, made findings of fact in favor of the defendant-appellee. We affirm his decision.

Flint, in the performance of its subcontract with Wright, did not use its own trucks. Instead, it leased trucks from men who are referred to as brokers—independent truckdrivers who owned and operated their own vehicles. The brokers furnished their own tires and other accessories. Their trucks bore a painted inscription, "Leased to Flint Construction Company."

Flint itself owned a fleet of trucks, based in Little Rock. All the tires and tubes sold by Proctor to Flint were delivered to Flint in Little Rock and were mounted by Flint on its own trucks. With one exception the Flint trucks were used exclusively on jobs other than the Interstate 40 project. The exception: Flint's dispatcher drove a loaded truck to the Interstate job on one occasion, but there were so many brokers waiting in line to deliver their loads that no other Flint-owned truck was ever sent to that job. The proof indicates that of 3,000 truckloads of dirt delivered to the job only that one load was carried in a Flint-owned vehicle.

Cecil Proctor, who with his wife owns the appellant company, testified that when he sold the supplies to Flint he knew that Flint was hauling for Wright as a subcontractor on the Interstate 40 contract. He made no investigation of where else Flint might be hauling. A local representative of the Goodyear Tire & Rubber Company, whose products were sold by Proctor, made a superficial investigation, but he too failed to uncover the readily ascertainable fact that Flint was working on a number of jobs in addition to the one for Wright.

The appellant, citing several federal cases construing a federal statute, puts the issue in this language: "May a supplier recover the purchase price under a construction bond for goods sold and delivered to a subcontractor where the supplier intended in good faith and reasonably believed that such goods would be used on the bonded job, or must he show that such goods were actually used in the construction of the work?" We think a better statement of the issue would be: "May a supplier compel a principal contractor or its surety to pay for supplies that were not used on the job and were never intended by the purchaser to be so used, merely because the seller erroneously concluded, upon inadequate investigation and with no element of estoppel or misrepresentation, that the supplies would be used upon that particular bonded job?" The question answers itself. We do not stop to discuss the cases cited, for they bear little resemblance to the fact situation now before us. It is plain enough that if the appellant should be held to be entitled to judgment in this case, principal contractors and their sureties would have absolutely no way to protect themselves against liability for supplies sold to subcontractors for use elsewhere.

Affirmed.