ERGON ASPHALT & EMULSIONS,
INC., Plaintiff,

v.

HOGAN CONSTRUCTION COMPANY,
INC., et al., Defendants.

No. LR–C–88–525.

United States District Court,
E.D. Arkansas, W.D.

Aug. 30, 1989.

Charles E. Smith, Wallace, Dover & Dixon, Little Rock, Ark. (Phelps, Dunbar & Marks, Jackson, Miss., of counsel), for plaintiff.

James C. Clark, Jr., Friday, Eldredge & Clark, and Bruce Munson, Huckaby, Munson, Rowlett & Tilley, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Pending before the Court is the motion for summary judgment of defendant Mid–Continent Casualty Company. A review of the undisputed facts reveals the following scenario.

On February 20, 1987, St. Francis/BMH entered into a contract with the Little Rock Airport Commission for runway repairs at the Little Rock Municipal Airport, identified as Little Rock Airport Improvements— Runway Repair 4–22 AIP Project No. 3–05–0035–13–87 (the "runway project"). On the same date, as required by A.C.A. § 18–44–503 St. Francis/BMH executed a performance and payment bond with Mid–Continent Casualty Company ("Mid–Continent") as surety.

St. Francis/BMH then entered into a subcontract with Hogan Construction Company ("Hogan") wherein Hogan agreed to supply asphalt paving material for the runway project. In September 1987, Hogan requested the plaintiff, Ergon Asphalt & Emulsions, Inc. ("Ergon"), to supply it with asphalt cement. Because Hogan had a poor credit history with Ergon, Ergon required that Hogan prepay Ergon for asphalt cement purchased for use on unbonded work. Ergon agreed to extend credit to Hogan for asphalt cement purchased for use on bonded work, provided payment for purchases for the bonded work was made by the 25th day of each month. Ergon allowed credit purchases for bonded projects in reliance upon the security of the bond to ensure payment if Hogan failed to pay as agreed. Hogan accepted these terms and supplied Ergon with a computer printout dated August 1987 showing that it planned to use asphalt cement ordered from Ergon on the runway project. Ergon supplied asphalt cement to Hogan on credit from September 1987 through May 1988.

The last asphalt used on the runway project was laid on October 17, 1987. The runway project was completed on October 25, 1987.

Hogan failed to pay Ergon for asphalt cement supplied in March and April of 1988. The total amount due Ergon for asphalt cement supplied to Hogan on credit was $110,451.63.

On November 28, 1988, Ergon received a refund from the State of Tennessee of $48,-968.18 for taxes paid on the asphalt cement. After crediting Hogan with the amount of the tax refund, the amount due Ergon is $63,592.53 plus interest. On July 25, 1989, pursuant to an agreement, judgment was entered against Hogan and St. Francis /BMH for $87,548.70. Thus, the only remaining issue is whether Mid–Continent as the surety under the bond on the airport project is liable to Ergon for the money owed for the asphalt cement.

Ergon contends that it reasonably relied on Hogan's assurances that the asphalt cement would be used for the runway project, and that in reliance on these assurances, continued to supply asphalt cement to Hogan. Mid–Continent contends that it is not liable to asphalt cement supplied some five months after completion of the runway project which was not used, nor intended to be used, for the runway project.

A.C.A. § 22–9–401 provides that all surety bonds for improvements of public works "shall be liable on all claims for labor and materials entering into the construction, or necessary or incident to or used in the course of construction, of the public improvements." A.C.A. § 18–44–503(b) allows persons who have valid claims against the bond to bring an action on the bond against the surety within a specified time period.

Interpreting the statute literally, Ergon would not appear to have a claim on the bond. The evidence is undisputed that the asphalt cement supplied in March and April were not in any way used for the runway project.

Ergon nevertheless argues that Mid–Continent should be held liable under its bond because it reasonably relied on Hogan's representations that the asphalt cement would be used for the runway project. It points to analogous situations under the Miller Act, 40 U.S.C. § 270a et seq., which requires a general contractor on a federal project to post a bond to protect those who supply labor or materials for the project. Courts have found that to prevail on a claim against the surety a supplier must prove that the materials were supplied in the prosecution of the work provided for in the contract and that the supplier had a good faith belief that the materials were intended for the specified work. *United States v. Avanti Constructors, Inc.,* 750 F.2d 759, 761 (9th Cir.1984). *See also U.S. for the Use of Krupp Steel Products v. Aetna Insurance Co.,* 831 F.2d 978 (11th Cir.1987); *U.S. for the Use of Sunbelt Pipe v. U.S. Fidelity and Guaranty Co.,* 785 F.2d 468 (4th Cir.1986).

Although there are very few cases construing the applicable Arkansas statutes, Arkansas would seem to require something more than a good faith belief in order to obtain the protection of the bond. In *Proctor Tire Service v. National Surety Corp.,* 242 Ark. 695, 415 S.W.2d 45 (1967), a supplier sold tires and tubes to a construction company hauling dirt as a subcontractor for a principal on a highway project. Virtually none of the goods sold were used or intended by the subcontractor to be used on the highway project. The supplier contended that it was entitled to recover on the bond because it had mistakenly but sincerely believed that the materials would be used on the highway project. The Arkansas Supreme Court stated as follows:

> The appellant, citing several federal cases construing a federal statute, puts the issue in this language: 'May a supplier recover the purchase price under a construction bond for goods sold and delivered to a subcontractor where the supplier intended in good faith and reasonably believed that such goods would be used on the bonded job, or must he show that such goods were actually used in the construction of the work?' We think a better statement of the issue would be: 'May a supplier compel a principal contractor or its surety to pay for supplies that were not used on the job and were never intended by the purchaser to be so

**1052**

used, merely because the seller erroneously concluded, upon inadequate investigation and with no element of estoppel or misrepresentation, that the supplies would be used upon that particular bonded job?' The question answers itself.... It is plain enough that if the appellant should be held to be entitled to judgment in this case, principal contractors and their sureties would have absolutely no way to protect themselves against liability for supplies sold to subcontractors for use elsewhere.

242 Ark. at 697, 415 S.W.2d 45.

The Court is persuaded that under the facts of the case reasonable minds could not differ in finding that Ergon failed to conduct an adequate investigation and that it should not have reasonably relied on any misrepresentation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.")

Hogan had a poor credit history with Ergon, so poor that Ergon refused to extend credit to Hogan on unbonded work. Nevertheless, Ergon relied on only an August 1987 computer printout supplied by Hogan. Ergon never bothered to investigate beyond Hogan's computer printout, such as reviewing the runway project contract or investigating the job site. Had Ergon reviewed the written runway project contract, it would have learned that the contract called for construction of approximately 5,500 tons of bituminous surface, and that the work was to be completed within twenty working days after it was begun. Furthermore, Ergon could have uncovered the readily ascertainable fact of the runway project's completion by a visit to the Little Rock airport.

Ergon's reliance on an eight month old computer printout, given Hogan's poor credit history, was not reasonable. It also was not reasonable given that the asphalt cement was delivered to the bulk plant of St. Francis, which is a processing plant in Little Rock. None of the invoices, tickets, delivery tickets or other documentation reflect delivery to the runway project site or use on the site.

The Arkansas Supreme Court's holding in *Proctor Tire Service* is dispositive. Finding no genuine issues of material fact, the Court finds that Mid–Continent is entitled to judgment as a matter of law.

Accordingly, the motion for summary judgment of Mid–Continent is granted. The motion to withdraw the motion to dismiss is granted. Plaintiff's motion to dismiss is moot.

IT IS SO ORDERED.